UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,**<br>**Plaintiff,** | ) | Civil Action No.   5:18-cv-469 (MAD/ATB) |
| **v.** | ) | |
| | ) | |
| $95,246.23 seized from Solvay Bank account number 31107626 maintained in the name of Jalaram Marts Inc. dba Davidson Grocery Munchies; $194,775.04 seized from Solvay Bank account number 3539780 maintained in the name of Jayesh Patel; $320,795.78 seized from Scottrade Brokerage account number 65511103 maintained in the name of Jayesh Patel; $318,236.01 seized from Scottrade Brokerage account 65541932 maintained in the name of Hemixa Patel (defendant accounts); | ) | |

U.S. Currency seized from the person of Jayesh Patel and 7154 Opal Drive, Liverpool New York in the amount of $44,779.00; U.S. Currency seized from inside 1219 Milton Ave, Solvay, New York in the amount of $16,756.00; U.S. Currency seized from a vehicle parked at 1219 Milton Ave, Solvay, New York in the amount of $16,000.00 (defendant currency);

Real property known as 101 Brassie Drive, Town of Van Buren, County of Onondaga, New York (Tax ID: 031.5-02-05.0)(defendant real property #1); and

Real property known as 5396 South Bay Road, Town of Salina, County of Onondaga, New York (Tax ID: 057.-04-03.2)(defendant real property #2).

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

**UNITED STATES OF AMERICA,**
         **Plaintiff,**

         **v.**

$95,246.23 seized from Solvay Bank account number 31107626 maintained in the name of Jalaram Marts Inc. dba Davidson Grocery Munchies; $194,775.04 seized from Solvay Bank account number 3539780 maintained in the name of Jayesh Patel; $320,795.78 seized from Scottrade Brokerage account number 65511103 maintained in the name of Jayesh Patel; $318,236.01 seized from Scottrade Brokerage account 65541932 maintained in the name of Hemixa Patel (defendant accounts);

Solvay Bank Corp Stock Numbers 24113, 24117, 24108, 24105, 24101 and 24096 CUSIP 83441Q105 and dividends (defendant stocks);

U.S. Currency seized from the person of Jayesh Patel and 7154 Opal Drive, Liverpool New York in the amount of $44,779.00; U.S. Currency seized from inside 1219 Milton Ave, Solvay, New York in the amount of $16,756.00; U.S. Currency seized from a vehicle parked at 1219 Milton Ave, Solvay, New York in the amount of $16,000.00 (defendant currency);

Real property known as 101 Brassie Drive, Town of Van Buren, County of Onondaga, New York (Tax ID: 031.5-02-05.0)(defendant real property #1); and

Real property known as 5396 South Bay Road, Town of Salina, County of Onondaga, New York (Tax ID: 057.-04-03.2)(defendant real property #2).

Civil Action No.   5:18-cv-469 (MAD/ATB)

)
**Defendants.**      )

## VERIFIED COMPLAINT OF FORFEITURE *IN REM*

Plaintiff, the United States of America, by its attorney, Grant C. Jaquith, United States Attorney for the Northern District of New York, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure.

## NATURE OF ACTION

1.      This is a civil forfeiture action to forfeit and condemn to the use and benefit of the United States of America the following property involved in violations of Title 18, United States Code, Sections 1956, 1957, and 1960; Title 21, United States Code, Sections 841 and 846; and Title 31, United States Code, Section 5330, and is subject to forfeiture pursuant to Title 18, United States Code, Section 981 and Title 21, United States Code, Section 881:

a)      $95,246.23 seized from Solvay Bank account number 31107626 maintained in the name of Jalaram Marts Inc. dba Davidson Grocery Munchies;

b)      $194,775.04 seized from Solvay Bank account number 3539780 maintained in the name of Jayesh Patel;

c)      $320,795.78 seized from Scottrade Brokerage account number 65511103 maintained in the name of Jayesh Patel;

d)      $318,236.01 seized from Scottrade Brokerage account 65541932 maintained in the name of Hemixa Patel;

e)      Solvay Bank Corp Stock Numbers 24113, 24117, 24108, 24105, 24101 and 24096 CUSIP 83441Q105 and dividends;

f)      $44,779 U.S. Currency seized from the person of Jayesh Patel and 7154 Opal Drive, Liverpool, New York;

g)      $16,756.00 U.S. Currency seized from inside 1219 Milton Ave, Solvay, New York;

h)      $16,000.00 U.S. Currency seized from a vehicle parked at 1219 Milton Ave, Solvay, New York;

i)      The real property commonly known as 101 Brassie Drive, Town of Van Buren, County of Onondaga, New York, Tax Map ID: 031.5-02-05.0, conveyed to Jayesh R. Patel by deed dated September 8, 2016, recorded in the Onondaga County Clerk's Office on October 3, 2016 and recorded at Book 5393 at Page 557 (hereinafter referred to as "defendant real property #1") is a single family residence owned by Jayesh Patel and is more particularly described as follows:

> ALL THAT TRACT OR PARCEL OF LAND, situate in the town of Van Buren, County of Onondaga and State of New York, being part of Farm Lot No. 15 in said Town and being more particularly described as follows:
>
> As Lot No. 1055 of Village Green Phase 14, according to a map of said tract made by Jack W. Cottrell, L.S., and filed in the Onondaga County Clerk's Office on May 6, 1985 as Map No. 6271.

j.)      The real property commonly known as 5396 South Bay Road, Town of Salina, County of Onondaga, New York, Tax ID: 057.-04-03.2, conveyed to Jayesh R. Patel by deed dated July 27, 1992, and recorded in the Onondaga County Clerk's Office on July 30, 1992 and recorded at Book 3782 at Page 14 (hereinafter referred to as "defendant real property #2") is a motel, which is owned by Hejal-Suhani Inc, dba Econo Lodge, the defendant real property #2 is more particularly described as follows:

3

ALL THAT TRACT OR PARCEL OF LAND, situate in the Town of Salina, in the County of Onondaga and State of New York, being part of Lot Number three (3) in said Town and bounded and described as follows:

Beginning at a point in the easterly line of the Syracuse and South Bay Railroad Company's Land, which point is in the Southerly line of the Schoolhouse lot of School District Number Seven (7) of the Town of Salina (which last mentioned lot fronts on what is known as Lawrence Road, in the Town and adjoins said Railroad company's land on the easterly side thereof, thence southerly along the easterly line of said Syracuse and South Bay Railroad Company's land eighty (80) feet to a point; thence easterly in a straight line about two hundred seventy-five (275) feet to a point in the westerly line of a fifty (50) foot road, which point is one hundred twentyfive (125) feet southerly measured along said westerly line of said fifty (50) foot road from the schoolhouse lot heretofore mentioned; thence northerly along the westerly line of said fifty (50) foot road one hundred twenty-five (125) feet to the southerly line of said school house lot about two hundred ninety-eight (298) feet to the place of beginning. The above described premises being Lot Number Six (6), as shown on a map of the North Section Hinsdale Farms made by M.B. Palmer, C.E., April 1920.

## THE DEFENDANTS *IN REM*

2.     On or about April 20, 2017 and April 24, 2017, the Internal Revenue Service –Criminal Investigation ("IRS-CI") obtained seizure warrants for the defendant accounts, defendant stock, and defendant U.S. currency authorized by the Honorable Andrew T. Baxter, United States Magistrate Judge for the Northern District of New York.

3.     Upon the execution of the seizure warrants, the defendant accounts, defendant stock, and defendant U.S. Currency were seized as follows:

a)     $95,246.23 seized from Solvay Bank account number 31107626, in the name of Jalaram Marts Inc. dba Davidson Grocery Munchies;

b)     $194,775.04 seized from Solvay Bank account 3539780, in the name of Jay Patel and/or Jayesh Patel;

4

c)      $318,236.01 seized from Scottrade Brokerage account number 65541932, in the name of Hemixa Patel;

d)      $320,795.78 seized from Scottrade Brokerage accounts maintained in the name of Jayesh Patel, including but not limited to, Scottrade Brokerage account number 65511103;

e)      Solvay Bank Corp Stock Numbers 24113, 24117, 24108, 24105, 24101 and 24096 CUSIP 83441Q105 and dividends;

f)      U.S. Currency seized from the person of Jayesh Patel and 7154 Opal Drive, Liverpool, New York, in the amount of $44,779.00;

g)      U.S. Currency seized from inside 1219 Milton Ave, Solvay, New York, in the amount of $16,756.00; and

h)      U.S. Currency seized from a vehicle parked at 1219 Milton Ave, Solvay, New York, in the amount of $16,000.00.

4.      The defendant accounts, defendant stock and defendant U.S. currency are presently in the custody of the IRS-CI.

5.      The defendant real property #1 and defendant real property #2 are located within this district and within the jurisdiction of the Court; they have not been seized. The United States will, as provided by 18 U.S.C. § 985(b)(1) and (c)(1):

i)      post notice of this action and a copy of the Verified Complaint on the defendant real property #1 and defendant real property #2;

ii)     serve notice of this action on the owner of defendant real property #1 and defendant real property #2, and any other person or entity who may claim an interest in the defendant property, along with a copy of this Verified Complaint; and

5

iii)      file a *lis pendens* against the defendant real property #1 and defendant real property #2.

## JURISDICTION AND VENUE

6.      Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant property.  This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

7.      This Court has *in rem* jurisdiction over the defendant accounts, defendant stock and defendant U.S. Currency under 28 U.S.C. § 1355(b).  Upon the filing of this complaint, the plaintiff requests that the Clerk of the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

8.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1355 and 1395, because the acts or omissions giving rise to the forfeiture occurred in this district.

## BASIS FOR FORFEITURE

9.      The defendant accounts and defendant U.S. Currency are subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(A) as property involved in, or traceable to, an offense in violation of Title 18, United States Code, Sections 1956, 1957, and 1960, and Title 31, United States Code, Section § 5330.

10.      The defendant accounts, defendant stock, and defendant U.S. Currency are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) as moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and

securities used or intended to be used to facilitate offenses in violation of Title 21, United States Code, Sections 841 and 846.

11.     The defendant real property #1 and defendant real property #2 are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(7), as real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate offenses in violation of Title 21, United States Code, Sections 841 and 846.

12.     The defendant real property #1 is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) as moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate the commission of offenses in violation of 21, United States Code, Sections 841 and 846.

13.     The defendant real property #2 is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) as property involved in, or traceable to, an offense in violation of Title 18, United States Code, Sections 1956, 1957, and 1960.

## FACTS

14.     The facts alleged in this complaint are based upon information and belief, the source of which are reports from the IRS-CI and other written and oral information officially received by the IRS-CI and Office of the United States Attorney for the Northern District of New York.

15.     In January 2017, the IRS-CI began an investigation based on information received from the Syracuse Police Department (hereinafter "SPD") that Jayesh Patel (hereinafter "Patel") had been selling crack cocaine from his mini-mart, Jalaram Marts Inc., dba Davidson Grocery

Munchies (hereinafter "Munchies"), and the defendant real property #2.   Munchies, an S Corporation, is located at 1219 Milton Ave, Solvay, N.Y. 13204, and is a convenience store with check-cashing services.  Jayesh Patel and "S.P." are the listed owners of Munchies.

16.     The SPD, in conjunction with IRS-CI, and various other local, state, and federal law enforcement agencies, had an active investigation into the cocaine-trafficking activities of Patel and his co-conspirators in the Central New York area.  Based on information gathered, Patel is a multi-ounce narcotics dealer operating in the greater Syracuse metropolitan area who sells crack cocaine.

17.     Patel has been involved in a licensed (and at times unlicensed) money transmitting business at Munchies for several years.  Patel allowed customers to cash checks in order to purchase crack cocaine.  Patel deposited the checks into his business checking account in order to make them appear as legitimate business income.

18.     Since October 2016, the SPD has utilized confidential and reliable informants (hereinafter "CRI's"), to make controlled purchases of narcotics, and have used other traditional investigative methods to help identify some of the members of the Patel drug trafficking organization.

19.     During the week of October 2, 2016, SPD Detectives received information from a CRI that Patel sold cocaine from Munchies and the defendant real property #2, for a period of years, and that he/she purchased cocaine from Patel on a regular basis from Munchies and the defendant real property #2, over the past several years.

20.     During the course of this investigation, the SPD conducted numerous controlled purchases of crack cocaine at Munchies.  Two reliable confidential and reliable informants ("CRI#1 and CRI#2") were utilized to conduct the purchase of the crack cocaine from Patel at Munchies.  At

all times during the controlled buys, CRI #1 and CRI #2 were surveilled by law enforcement officers.

## CONTROLLED PURCHASES OF CRACK COCAINE

21.     During the week of October 9, 2016, detectives met with CRI #1 for the purpose of CRI #1 purchasing a quantity of crack cocaine from Munchies.  Detectives searched CRI #1 and confirmed that he/she was not in possession of any drugs, weapons, money or other contraband. CRI #1 was then given $50 in official government funds to be used to purchase .50 grams of crack cocaine from Munchies.  A surveillance team was set up in the area of Munchies prior to CRI #1's arrival.  CRI #1 was dropped off by detectives directly at Munchies and observed entering the business.  After a short period of time, CRI #1 exited Munchies and returned to the detective's vehicle, under constant law enforcement surveillance.  After entering the detective's vehicle, CRI #1 handed the detective a beige chunky substance that sold to him/her by Patel as crack cocaine. CRI #1 advised that he/she purchased the crack cocaine from Patel at Munchies.  SPD detectives conducted a field test, using 904 B Reagent cocaine test kit, which achieved positive results for the presence of cocaine.

22.     During the week of December 12, 2016, detectives met with CRI #1 for the purpose of CRI #1 purchasing a quantity of crack cocaine from Munchies.  Detectives searched CRI #1 and confirmed that he/she was not in possession of any drugs, weapons, money or other contraband. CRI #1 was then given $150 in official government funds to be used to purchase 1.5 grams of crack cocaine from Munchies.  A surveillance team was set up in the area of Munchies prior to CRI #1's arrival.  Detectives dropped CRI #1 directly at Munchies and observed CRI#1 enter the business.  CRI #1 exited Munchies a short time later, and returned to the detective's vehicle, under constant law enforcement surveillance.  After entering the detective's vehicle, CRI #1 handed the

detective a beige chunky substance sold to him/her by Patel as crack cocaine. CRI #1 advised that he/she purchased the crack cocaine from Patel at Munchies. SPD detectives conducted a field test, using 904 B Reagent cocaine test kit, which achieved positive results for the presence of cocaine.

23.    During the week of January 2, 2017, detectives met with CRI #1 for the purpose of CRI #1 purchasing a quantity of crack cocaine from Munchies. Detectives searched CRI #1 and confirmed that he/she was not in possession of any drugs, weapons, money or other contraband. CRI #1 was then given $100 in official government funds to be used to purchase 1 gram of crack cocaine from Munchies. A surveillance team was set up in the area of Munchies prior to CRI #1's arrival. Detectives dropped CRI #1 directly at Munchies and observed CRI #1 enter the business. CRI #1 exited Munchies a short time later, and returned to the detective's vehicle, under constant law enforcement surveillance. After entering the detective's vehicle, CRI #1 handed the detective a beige chunky substance sold to him/her by Patel as crack cocaine. CRI #1 advised that he/she purchased the crack cocaine from Patel at Munchies. SPD detectives conducted a field test, using 904 B Reagent cocaine test kit, which achieved positive results for the presence of cocaine.

24.    During the week of January 2, 2017, detectives met with CRI #2 for the purpose of CRI #2 purchasing a quantity of crack cocaine from Munchies. Detectives searched CRI #2 and confirmed that he/she was not in possession of any drugs, weapons, money or other contraband. CRI #2 was then given $50 in official government funds to be used to purchase crack cocaine from Munchies. A surveillance team was set up in the area of Munchies prior to CRI #2's arrival. CRI #2 was dropped off by detectives directly at Munchies and observed entering the business. After a short period of time, CRI #2 exited Munchies and returned to the detective's vehicle, under constant law enforcement surveillance. After entering the detective's vehicle, CRI #2 handed the detective a beige chunky substance sold to him/her by Patel as crack cocaine. CRI #2 advised that he/she

purchased the crack cocaine from Patel at Munchies.  SPD detectives conducted a field test, using

904 B Reagent cocaine test kit, which achieved positive results for the presence of cocaine.

25.     During the week of January 16, 2017, detectives met with CRI #2 for the purpose of CRI

#2 purchasing a quantity of crack cocaine from Munchies.  Detectives searched CRI #2 and

confirmed that he/she was not in possession of any drugs, weapons, money or other contraband.

CRI #2 was then given $50 in official government funds to be used to purchase crack cocaine from

Munchies.  A surveillance team was set up in the area of Munchies prior to CRI #2's arrival.  CRI

#2 was dropped off by detectives directly at Munchies and observed entering the business.  After

a short period of time, CRI #2 exited Munchies and returned to the detective's vehicle, under

constant law enforcement surveillance.  After entering the detective's vehicle, CRI #2 handed the

detective a beige chunky substance sold to him/her by Patel as crack cocaine.  CRI #2 advised that

he/she purchased the crack cocaine from Patel at Munchies.  SPD detectives conducted a field test,

using 904 B Reagent cocaine test kit, which achieved positive results for the presence of cocaine.

26.     During the week of January 23, 2017, detectives met with CRI #1 for the purpose of CRI

#1 purchasing a quantity of crack cocaine from Munchies.  Detectives searched CRI #1 and

confirmed that he/she was not in possession of any drugs, weapons, money or other contraband.

CRI #1 was then given $50 in official government funds to be used to purchase .50 grams crack

cocaine from Munchies.  A surveillance team was set up in the area of Munchies prior to CRI #1's

arrival.  CRI #1 was dropped off by detectives directly at Munchies and observed entering the

business.  After a short period of time, CRI #1 exited Munchies and returned to the detective's

vehicle, under constant law enforcement surveillance.  After entering the detective's vehicle, CRI

#1 handed the detective a beige chunky substance sold to him/her by Patel as crack cocaine.  CRI

#1 advised that he/she purchased the crack cocaine from Patel at Munchies.  SPD Detectives

conducted a field test, using 904 B Reagent cocaine test kit, which achieved positive results for the presence of cocaine.

27.     During the week of March 13, 2017, detectives met with CRI #1 for the purpose of CRI #1 purchasing a quantity of crack cocaine from Munchies. Detectives searched CRI #1 and confirmed that he/she was not in possession of any drugs, weapons, money or other contraband. CRI #1 was then given a $100.00 USPS Money Order, Number 24355340548, to be used to purchase 1 gram of crack cocaine from Munchies. A surveillance team was set up in the area of Munchies prior to CRI #1's arrival. CRI #1 was dropped off by detectives directly at Munchies and observed entering the business. After a short period of time, CRI #1 exited Munchies and returned to the detective's vehicle, under constant law enforcement surveillance. After entering the detective's vehicle, CRI #1 handed the detective a beige chunky substance sold to him/her by Jayesh Patel as crack cocaine. CRI #1 advised that he/she purchased the crack cocaine from Jayesh Patel at Munchies using the aforementioned USPS Money Order. SPD Detectives conducted a field test, using 904 B Reagent cocaine test kit, which achieved positive results for the presence of cocaine. The United Postal Service confirmed that the aforementioned USPS money order number 24355340548 was subsequently deposited into the defendant account 31107626.

28.     During the week of March 13, 2017, detectives met with CRI #1 for the purpose of CRI #1 purchasing a quantity of crack cocaine from Munchies. Detectives searched CRI #1 and confirmed that he/she was not in possession of any drugs, weapons, money or other contraband. CRI #1 was then given a $100.00 USPS Money Order, Number 24355340842, to be used to purchase .50 grams of crack cocaine from Munchies and cash the remainder of the check. A surveillance team was set up in the area of Munchies prior to CRI #1's arrival. CRI #1 was dropped off by detectives directly at Munchies and observed entering the business. After a short period of time, CRI #1

12

exited Munchies and returned to the detective's vehicle, under constant law enforcement surveillance. After entering the detective's vehicle, CRI #1 handed the detective a beige chunky substance sold to him/her by Patel as crack cocaine. CRI #1 advised that he/she purchased the crack cocaine from Patel at Munchies using the aforementioned USPS Money Order and that he/she received $48.00 cash back. CRI #1 further stated that Patel charged him/her $2.00 to "cash" the remainder of the USPS Money Order. SPD detectives conducted a field test, using 904 B Reagent cocaine test kit, which achieved positive results for the presence of cocaine. The United Postal Service confirmed that the aforementioned USPS money order number 24355340842 was subsequently deposited into the defendant account 31107626.

29.     During the week of March 13, 2017, detectives met with CRI #1 for the purpose of CRI #1 purchasing a quantity of crack cocaine from Munchies. Detectives searched CRI #1 and confirmed that he/she was not in possession of any drugs, weapons, money or other contraband. CRI #1 was then given a $100.00 USPS Money Order, Number 24355340875, to be used to purchase .50 grams of crack cocaine from Munchies and cash the remainder of the check. A surveillance team was set up in the area of Munchies prior to CRI #1's arrival. CRI #1 was dropped off by detectives directly at Munchies and observed entering the business. After a short period of time, CRI #1 exited Munchies and returned to the detective's vehicle, under constant law enforcement surveillance. After entering the detective's vehicle, CRI #1 handed the detective a beige chunky substance sold to him/her by Jayesh Patel as crack cocaine. CRI #1 advised that he/she purchased the crack cocaine from Jayesh Patel at Munchies using the aforementioned USPS Money Order and that he/she received $48.00 cash back. CRI #1 further stated that Jayesh Patel charged him/her $2.00 to "cash" the remainder of the USPS Money Order. SPD detectives conducted a field test, using 904 B Reagent cocaine test kit, which achieved positive results for the presence of cocaine.

13

The United Postal Service confirmed that the aforementioned USPS money order number 24355340875 was subsequently deposited into the defendant account 31107626.

30.     During the week of March 20, 2017, detectives met with CRI #1 for the purpose of CRI #1 purchasing a quantity of crack cocaine from Munchies. Detectives searched CRI #1 and confirmed that he/she was not in possession of any drugs, weapons, money or other contraband. CRI #1 was then given a $100.00 USPS Money Order, Number 24355337725, to be used to purchase .50 grams of crack cocaine from Munchies and cash the remainder of the check. A surveillance team was set up in the area of Munchies prior to CRI #1's arrival. CRI #1 was dropped off by detectives directly at Munchies and observed entering the business. After a short period of time, CRI #1 exited Munchies and returned to the detective's vehicle, under constant law enforcement surveillance. After entering the detective's vehicle, CRI #1 handed the detective a beige chunky substance sold to him/her by Patel as crack cocaine. CRI #1 advised that he/she purchased the crack cocaine from Patel at Munchies using the aforementioned USPS Money Order and that he/she received $48.00 cash back. CRI #1 further stated that Patel charged him/her $2.00 to "cash" the remainder of the USPS Money Order. SPD detectives conducted a field test, using 904 B Reagent cocaine test kit, which achieved positive results for the presence of cocaine. The United Postal Service confirmed that the aforementioned USPS money order number 24355337725 was subsequently deposited into the defendant account 31107626.

31.     During the week of March 20, 2017, detectives met with CRI #1 for the purpose of CRI #1 purchasing a quantity of crack cocaine from Munchies. Detectives searched CRI #1 and confirmed that he/she was not in possession of any drugs, weapons, money or other contraband. CRI #1 was then given a $100.00 USPS Money Order, Number 24355341404, to be used to purchase .50 grams of crack cocaine from Munchies and cash the remainder of the check. A surveillance team was

14

set up in the area of the Munchies prior to CRI #1's arrival. CRI #1 was dropped off by detectives directly at Munchies and observed entering the business. After a short period of time, CRI #1 exited Munchies and returned to the detective's vehicle, under constant law enforcement surveillance. After entering the detective's vehicle, CRI #1 handed the detective a beige chunky substance sold to him/her by Patel as crack cocaine. CRI #1 advised that he/she purchased the crack cocaine from Patel at Munchies using the aforementioned USPS Money Order and that he/she received $48.00 cash back. CRI #1 further stated that Patel charged him/her $2.00 to "cash" the remainder of the USPS Money Order. SPD detectives conducted a field test, using 904 B Reagent cocaine test kit, which achieved positive results for the presence of cocaine. The United Postal Service confirmed that the aforementioned USPS money order number 24355341404 was subsequently deposited into defendant account 31107626.

32.     During the week of March 20, 2017, detectives met with CRI #1 for the purpose of CRI #1 purchasing a quantity of crack cocaine from Munchies. Detectives searched CRI #1 and confirmed that he/she was not in possession of any drugs, weapons, money or other contraband. CRI #1 was then given a $100.00 USPS Money Order, Number 24355338074, to be used to purchase .50 grams of crack cocaine from Munchies and cash the remainder of the check. A surveillance team was set up in the area of the Munchies prior to CRI #1's arrival. CRI #1 was dropped off by detectives directly at Munchies and observed entering the business. After a short period of time, CRI #1 exited Munchies and returned to the detective's vehicle, under constant law enforcement surveillance. After entering the detective's vehicle, CRI #1 handed the detective a beige chunky substance sold to him/her by Patel as crack cocaine. CRI #1 advised that he/she purchased the crack cocaine from Patel at Munchies using the aforementioned USPS Money Order and that he received $49.00 cash back. CRI #1 further stated that Jayesh Patel charged him/her $1.00 to "cash"

15

the remainder of the USPS Money Order. SPD detectives conducted a field test, using 904 B Reagent cocaine test kit, which achieved positive results for the presence of cocaine. The United Postal Service confirmed that the aforementioned USPS money order number 24355338074 was subsequently deposited into defendant account 31107626.

33.    During the week of March 20, 2017, detectives met with CRI #1 for the purpose of CRI #1 purchasing a quantity of crack cocaine from Munchies. Detectives searched CRI #1 and confirmed that he/she was not in possession of any drugs, weapons, money or other contraband. CRI #1 was then given a $100.00 USPS Money Order, Number 24355338063, to be used to purchase .50 grams of crack cocaine from Munchies and cash the remainder of the check. A surveillance team was set up in the area of Munchies prior to CRI #1's arrival. CRI #1 was dropped off by detectives directly at Munchies and observed entering the business. After a short period of time, CRI #1 exited Munchies and returned to the detective's vehicle, under constant law enforcement surveillance. After entering the detective's vehicle, CRI #1 handed the detective a beige chunky substance sold to him/her by Jayesh Patel as crack cocaine. CRI #1 advised that he/she purchased the crack cocaine from Jayesh Patel at Munchies using the aforementioned USPS Money Order and that he/she received $49.00 cash back. CRI #1 further stated that Jayesh Patel charged him/her $1.00 to "cash" the remainder of the USPS Money Order. SPD detectives conducted a field test, using 904 B Reagent cocaine test kit, which achieved positive results for the presence of cocaine. The United Postal Service confirmed that the aforementioned USPS money order number 24355338063 was subsequently deposited into the Jalaram Marts Inc. dba Davidson Grocery Munchies Solvay Bank checking account 31107626.

34.    During the week of March 27, 2017, detectives met with CRI #1 for the purpose of CRI #1 purchasing a quantity of crack cocaine from Munchies located in Syracuse, New York. Detectives

16

searched CRI #1 and confirmed that he/she was not in possession of any drugs, weapons, money or other contraband. CRI #1 was then given a $100.00 USPS Money Order, Number 24304648601, to be used to purchase .50 grams of crack cocaine from Munchies and cash the remainder of the check. A surveillance team was set up in the area of Munchies prior to CRI #1's arrival. CRI #1 was dropped off by detectives directly at Munchies and observed entering the business. After a short period of time, CRI #1 exited Munchies and returned to the detective's vehicle, under constant law enforcement surveillance. After entering the detective's vehicle, CRI #1 handed the detective a beige chunky substance sold to him/her by Jayesh Patel as crack cocaine. CRI #1 advised that he/she purchased the crack cocaine from Jayesh Patel at Munchies using the aforementioned USPS Money Order and that he/she received $48.00 cash back. CRI #1 further stated that Patel charged him/her $2.00 to "cash" the remainder of the USPS Money Order. CRI #1 further stated that both the crack and the $48.00 cash back came from Patel's pants pocket. SPD detectives conducted a field test, using 904 B Reagent cocaine test kit, which achieved positive results for the presence of cocaine. The United Postal Service confirmed that the aforementioned USPS money order number 24304648601 was subsequently deposited into the defendant account 31107626.

35.     During the week of April 16, 2017, detectives met with CRI #1 for the purpose of CRI #1 purchasing a quantity of crack cocaine from Munchies located in Syracuse, New York. Detectives searched CRI #1 and confirmed that he/she was not in possession of any drugs, weapons, money or other contraband. CRI #1 was given a $100.00 USPS Money Order, Number 236837173315, to be used to purchase crack cocaine from Munchies and cash the remainder of the check. A surveillance team was set up in the area of Munchies prior to CRI #1's arrival. CRI #1 was dropped off by detectives directly at Munchies and observed entering the business. After a short period of

17

time, CRI #1 exited Munchies and returned to the detective's vehicle, under constant law enforcement surveillance. After entering the detective's vehicle, CRI #1 handed the detective a beige chunky substance sold to him/her by Jayesh Patel as crack cocaine. CRI #1 advised that he/she purchased the crack cocaine from Jayesh Patel at Munchies using the aforementioned USPS Money Order and that he/she received $45.00 cash back. CRI #1 further stated that Patel charged him/her $5.00 to "cash" the remainder of the USPS Money Order. CRI #1 further stated that both the crack and the $45.00 cash back came from Patel's pants pocket. SPD detectives conducted a field test, using 904 B Reagent cocaine test kit, which achieved positive results for the presence of cocaine. The United Postal Service confirmed that the aforementioned USPS money order number 236837173315 was subsequently deposited into the defendant account 31107626.

## SEARCH AND SEIZURE WARRANTS

36.     On April 20, 2017, SPD special agents from IRS-CI and detectives and investigators from SPD, Onondaga County Sheriff's Department ("OCSD") and the New York State Police executed judicially authorized State search and seizure warrants on Jayesh Patel, Munchies, Patel's residence on Opal Drive, Liverpool, N.Y., Patel's 2016 Toyota Tundra bearing NYS Reg. 84844MH, 101 Seneca View Drive, Van Buren, N.Y., defendant real property #1, and defendant real property #2.

37.     On April 20, 2017, United States Magistrate Judge Andrew Baxter signed seizure warrants authorizing the seizure of bank and brokerage accounts and stock maintained in the name of Jalaram Marts Inc. dba Davidson Grocery Munchies, Jayesh Patel and Hexima Patel, as property subject to forfeiture.

38.     On April 20, 2017, between approximately 4:00 p.m. and 4:10 p.m., SPD detectives conducting surveillance on Patel and Patel's 2016 Toyota Tundra, observed Patel conduct a hand-to-hand transaction with J.S.  Specifically, SPD detectives observed J.S. meet with Patel on the driver's side of Patel's 2016 Toyota Tundra, and observed a hand-to-hand transaction between Patel and J.S. Patel left the location in his 2016 Toyota Tundra.  J.S. confirmed that he purchased crack from Jayesh Patel during this meeting.

39.     On April 20, 2017, between approximately 4:20 p.m. and 4:40 p.m., SPD detectives conducting surveillance on Patel and his 2016 Toyota Tundra, observed Patel conduct a hand-to-hand transaction with an unknown white male in the TJ Sheehan parking lot in Liverpool, New York.  Specifically, the unknown male met Patel at the driver's side of the 2016 Toyota Tundra, conducted the hand-to-hand transaction and returned to his vehicle.  After the transaction, Patel left the TJ Sheehan parking lot in his 2016 Toyota Tundra, and traveled north bound on Interstate 81 towards Syracuse.

40.     On April 20, 2017, SPD stopped Patel in his 2016 Toyota Tundra, and a search was conducted of Patel and the 2016 Toyota Tundra pursuant to judicially authorized search warrants. During the search of Patel's person, SPD detectives located $3,155 in U.S. currency in Patel's pants pockets.

41.     Law enforcement officers read Patel his Miranda Warnings, and Patel agreed to answer questions. Patel stated that he had crack cocaine in the steering column of his 2016 Toyota Tundra.

42.     During the search of the 2016 Toyota Tundra, SPD detectives found: clear-knotted plastic containing 10 pieces of a beige chunky substance, in a white paper, under the steering column; clear plastic containing a beige chunky substance in the driver's side door; white paper containing a beige chunky substance under the driver's seat; clear knotted plastic containing folded papers

19

each containing a chunky substance located under the steering column; credit/debit cards in the center console; cell phones; 12 cartons of cigarettes; and 3 white pieces of paper containing a beige chunky substance located under the steering column. SPD detectives conducted a field test, using 904 B Reagent cocaine test kit, which achieved positive results for the presence of cocaine.

43.     Patel admitted that he had crack cocaine hidden at his residence on Opal Drive, and that it was located in the basement under the hot tub. Patel admitted that he had a large sum of cash stored at his residence on Opal Drive. Patel stated that he had cash located in various places in his master bedroom as well as a safe located in the closet of his master bedroom. Patel admitted to selling crack cocaine in order to "earn extra cash" for himself and his girlfriend, K.G. Patel stated that he needed cash to pay for his girlfriend's expenses and that the only way he could earn cash was by selling crack. When asked if he was earning cash at his businesses, Patel reiterated the only way he could make cash to pay for his girlfriend's expenses was from selling crack.

44.     Patel admitted that he purchased his crack from "T" in Syracuse.

45.     Patel was asked about numerous debit/credit cards, Direct Express Cards and NYS Benefit cards in other people's names found in his possession. Patel stated that he held onto the cards because sometimes his customers at Munchies could not pay for a soda so he held the cards as collateral. When money was deposited onto the cards, he would take the money owed for the sodas purchased. When asked if he was holding onto the cards because he "fronted" the cardholder crack, Patel hesitated and said "no."

46.     During the execution of the aforementioned judicially authorized State search warrant at Opal Drive, Liverpool, New York, law enforcement officers found U.S. currency in several locations in Patel's master bedroom. Specifically, the following amounts of U.S. Currency were found at the following locations in Patel's bedroom: $1,050 in U.S. currency from the nightstand;

20

$35,982 in U.S. currency from a safe in the closet; $80 in U.S. currency on a nightstand; $1,000 in U.S. currency on a shelf in the closet; and $1,436 in the closet. In S.P.'s upstairs master bedroom law enforcement officers located $2,076 in U.S. currency. A total of $44,779 in U.S. Currency was seized from Jayesh Patel and Opal Drive.

47.     In the downstairs master bedroom, numerous financial documents were located, including U.S. Individual Income Tax Returns for the years 2014 and 2015 in the name of Jayesh and Hemixa Patel. These returns showed W-2 wage income for Jayesh and Hemixa Patel totaling $58,260 in 2014 and $55,330 in 2015.

48.     While searching the basement of Opal Drive, under the stairs, SPD detectives found a white plastic bag containing: (1) sandwich bag containing 19 individual white paper and plastic wrapped pieces of beige chunky substance; (1) sandwich bag containing 8 individual white paper and plastic wrapped pieces of beige chunky substance; (1) knotted piece of plastic containing a beige chunky substance; (1) larger piece of knotted plastic containing a beige chunky substance; and a digital scale with beige residue on the weighing surface and numerous sections of white paper. SPD detectives conducted a field test, using 904 B Reagent cocaine test kit, which achieved positive results for the presence of cocaine.

49.     During the execution of judicially authorized search warrant at Munchies, law enforcement officers found $2,301 in U.S. currency in the freezer underneath produce, and $4,148 in U.S. currency in the register. S.P., who was working at the store at the time of the search warrant, informed law enforcement officers that the cash found in the freezer and the register was from the Solvay Bank account number 31107626 checking account. S.P. further stated that he had an additional amount of cash from this same checking account in his vehicle parked outside 1219 Milton Avenue, Solvay, New York. S.P. consented to a search of his 2011 White Toyota Sienna.

21

During a search of this vehicle, SPD Detectives found an additional $16,000 in U.S. currency. S.P. explained that he did not like to keep large sums of cash inside Munchies as the store had been robbed on numerous occasions. In total, law enforcement officers recovered $16,756 in U.S. Currency from inside the Munchies store, and $16,000 from S.P.'s Toyota Sienna vehicle parked at 1219 Milton Avenue, Solvay. New York.

50.      During the execution of a seizure warrant at Solvay Bank, the Solvay Bank Security Officer advised law enforcement officers that $40,000 in cash was withdrawn from the Munchies Solvay Bank checking account ending 7626 during the afternoon of April 19, 2017.

## SOLVAY BANK STOCK

51.      During the course of this investigation, agents learned of P.W., a crack cocaine customer of Patel who resided at the defendant real property #2.

52.      On October 19, 2016, an Onondaga County Sherriff's Department Deputy was dispatched to the defendant real property #2 due to a civil dispute in progress; specifically a male failed to pay his taxi fare and walked into the motel. The deputy identified the male as P.W., who was staying in Room 120 as a friend of the owner, Patel. The deputy spoke to P.W. from just outside the open motel room door. While standing in the hallway, the deputy observed numerous pieces of thin copper coil, commonly referred to by the brand "chore boy", along the entry way and an open cigarette pack on the dresser which appeared to contain two (2) glass smoking pipes, or "stems." These items are indicative of crack cocaine use and/or paraphernalia.

53.      The deputy requested and received consent to search P.W.'s room. During the search, the deputy secured the aforementioned cigarette pack that contained the glass smoking pipes and confirmed that they contained a white substance, suspected to be crack cocaine. The deputy field tested said substance and determined, via a NIK cocaine wipe field test, that it resulted in a positive

22

reaction for the presence of cocaine.  P.W. was subsequently arrested for criminal possession of a controlled substance in the 7th Degree.

54.     After his arrest, P.W. uttered, "[c]an't ya give me a break, I've already spent 25 grand on crack this month.  I can't pay this."

55.     In January 2017, the Bank Security Officer at Solvay Bank was interviewed and stated that in September 2016, Patel approached the branch manager of Solvay Bank located at 1537 Milton Avenue and informed the branch manager that he maintained a private loan with P.W., a customer and shareholder of Solvay Bank, in the amount of $25,000.00.  Patel further explained that the loan was secured with Solvay Bank Stock.  Patel provided the branch manager with a copy of a loan document between Patel and P.W.

56.     On September 19, 2016, P.W. executed a stock transfer of 750 shares from his Solvay Bank Trust & Investment Department account to Patel, with a fair market value of $24,465.00.

57.     On October 11, 2016, P.W. executed a stock transfer of 800 shares to Patel, with a fair market value of just over $26,000.00.

58.     On November 11, 2016, P.W. executed a stock transfer of 1,000 shares to Patel, with a fair market value of $34,000.00.

59.     On December 1, 2016, P.W. executed a stock transfer of 1,000 shares to Patel, with a fair market value of $34,000.00.

60.     On December 30, 2016, P.W. executed a stock transfer of 500 shares to Patel, with a fair market value of $17,750.00.

61.     On January 20, 2016, P.W. executed a Confession of Judgment and agreed to pay Patel, in structured increments, for a debt due of $59,700.  The structured increments called for the transfer

of currency or bank stock beginning on January 19, 2017, with the first payment of $21,960 due January 19, 2017.

62.     On January 30, 2017, P.W. executed a stock transfer of 600 shares to Patel, with a fair market value of $22,200.00.

63.     The total fair market value of the shares transferred from P.W. to Patel was in excess of $158,416.00, well above the purported loan amount of $25,000.00. P.W.'s stocks are now maintained in the name of Jayesh Patel and/or Jay Patel.

## WITNESS INTERVIEWS

### Cooperating Witness #1 ("CW #1"):

64.     On April 21, 2017, SPD Officers, IRS Agents and others interviewed cooperating witness #1 (hereinafter referred to as CW #1) at his/her residence in Syracuse, New York. CW #1 said he/she first met Patel when a relative began cashing payroll checks at Munchies. CW #1 began cashing the disability and SSI checks of that relative at Munchies, and his/her own checks at Munchies.

65.     CW #1 stated that Patel cashed his/her checks for him/her, and charged $20.00 per check, unless it was a large-dollar value check. In that instance, Patel charged CW #1, $1,000 per check. When CW #1 had a larger check he/she would contact Patel to let him know he/she received a large-dollar value check and Patel would cash the check at his/her residence.

66.     CW #1 admitted that he/she purchased a 50 or 100 piece of crack cocaine from Patel on an almost daily basis from 2015 through August 2016, when he/she stopped smoking crack. Patel sold crack to CW #1 at Munchies, defendant real property #2, and at CW #1's residence. After he/she quit smoking crack, CW #1 continued to purchase crack cocaine from Patel for an acquaintance. CW #1 stated the last time he/she purchased crack cocaine from PATEL was April

19, 2017, and on that occasion, Patel sold him/her a 100 piece. Your affiant is aware from discussions with SPD narcotics detectives involved in this investigation that a 50 piece generally refers to a .50 gram of crack, and a 100 piece refers to a gram of crack.

67.    CW #1 added that he/she bought a 50 piece from Patel approximately three weeks prior to the interview of CW #1 (on April 21, 2017) and Patel delivered the crack and Seneca Brand cigarettes to his/her residence.

68.    CW #1 stated that when he/she cashed a large dollar-value check, he/she would typically buy an 8-ball of crack from PATEL for $300.00. Your affiant is aware from discussions with SPD narcotics detectives involved in this investigation that an 8-ball of crack is generally 3.5 grams.

69.    CW #1 stated that he/she paid for the crack cocaine with the checks he/she was cashing through Patel, and that Patel also fronted cocaine to CW #1, taking payment out of the next check he/she had to cash.

70.    CW #1 reviewed a check dated June 21, 2016 in the amount of $31,000. CW #1 stated that he/she contacted Patel to let him know that he/she had the check and that Patel met him/her at his/her residence. Patel cashed the $31,000 check, charged CW #1 $1,000 to cash the check. When asked if CW #1 received $30,000 from Patel after cashing the check, he/she said no, that he/she also purchased Seneca cigarettes and crack from Patel during this transaction and Patel took payment for the Seneca cigarettes and crack from the $30,000.

**Cooperating Witness #2 ("CW #2"):**

71.    On April 25, 2017, law enforcement officers interviewed CW #2, an acquaintance of Patel. CW #2 advised that Patel began selling synthetic cannabinoids, known to his customers as "spike" in or around 2013. CW #2 also advised that Patel sold untaxed Seneca Brand cigarettes.

73.    CW #2 stated that Patel stopped selling spike and started selling crack.  CW #2 explained that Patel started dating his mistress, K.G., and began selling crack to fund K.G.'s lifestyle.  CW #2 added that Patel used the cash he made selling crack to avoid a paper trail and potential suspicion from Patel's wife.

74.    CW #2 advised agents and officers of the name of one of Patel's suppliers.  CW #2 stated that Patel paid between $1200 and $1300 per ounce.  CW #2 believed Patel sold between four and five ounces of crack cocaine a week.

75.    CW #2 stated that Patel purchased defendant real property #1 for K.G.  CW #2 stated that Patel renovated defendant real property #1 and that Patel paid for the renovations with funds earned from selling crack.  CW #2 noted purchases from Bargain Outlet and the Home Depot.  Records from Bargain outlet establish purchase orders in K.G.'s name.

76.    CW #2 stated that Patel paid for some of the renovation work with crack because he did not want to give people cash.

77.    CW #2 stated that Patel hid crack in a cubby in the basement of the defendant real property #1.  CW #2 also stated that Patel hid crack in the boiler room at the defendant property #2, and in the back room at his store, Munchies.

78.    CW #2 stated that Patel provided hotel rooms at defendant real property #2 for co-conspirators, customers, and his supplier to use to sell drugs.

79.    CW #2 stated that Patel accepted payroll checks, and any other form of checks, as payment for crack.  CW #2 added that Patel allowed him/her to pay for crack with checks regularly.

80.    CW #2 stated that Patel fronted customers crack, but would collect an EBT card or bankcard as collateral.

81.    CW #2 stated that Patel sold his crack wrapped in small pieces of paper.

82.     CW #2 stated that when Patel began selling crack he stored it in the basement of 101 Seneca View, and in the boiler room at the defendant real property #2. CW #2 stated that Patel hid crack cocaine in the steering column of his 2016 Tundra. CW #2 was aware that Patel asked one of CW #2's friends to build Patel a trap (to hide narcotics) in the Tundra. CW #2 stated that Patel also hid crack in the Seneca Brand cigarette cartons in the garage, at his residence, on Opal Drive. CW #2 explained that he/she and another individual met Patel at Opal Drive to pick up cash and crack, and that this transaction occurred in the garage.

83.     CW #2 attempted to talk to S.P., the owner of Munchies, about what Patel was doing but S.P. told CW #2 that he did not "want to know anything. The less I know the better." CW #2 stated this conversation happened at defendant real property #2.

**Cooperating Witness #3 ("CW #3"):**

84.     On May 10, 2017, representatives of SPD, IRS-CI and the U.S. Attorney's Office, interviewed CW #3, also referred to as P.W., at the United States Attorney's Office in Syracuse, New York.

85.     CW #3 met PATEL approximately five years ago at Munchies. CW #3 learned that Patel sold "spike" from Munchies approximately three or four years ago.

86.     CW #3 began purchasing crack from Patel prior to September 2014. CW #3 started buying 50 pieces from Patel, typically two at a time. CW #3 would buy crack from Patel at Munchies or would meet Patel at different places around the Syracuse, New York area. CW #3 explained that he/she would call Patel and to inform him that he/she was looking for crack and Patel would tell CW #3 where to meet.

87.     In the beginning, CW #3 purchased crack cocaine from Patel at least two or three times per week, and CW #3 would also buy crack from Patel through a third party.

88.     A few weeks after CW #3 started to buy crack cocaine from Patel, CW #3 stayed at Patel's hotel, the defendant real property #2. CW #3 explained that Patel worked at the defendant property #2 in the morning and would deliver crack cocaine to CW #3's room, or instruct CW #3 to meet him (Patel) in the main office of the defendant real property #2, to pick up the crack. At this point, CW #3 was buying at least $200-$300 worth of crack a day for himself/herself from Patel. In addition to the $200-$300 a day for himself/herself, CW #3 was purchasing crack cocaine from Patel for other people.

89.     Since 2014, CW #3 stated that he/she consistently purchased crack cocaine from Patel three to four times a week. In 2015, CW #3 ran out of cash and Patel began to "front" him/her. Patel was aware that CW #3 had an inheritance. Patel allowed CW #3 to accumulate crack debt that CW #3 paid back with Solvay Bank Stock.

90.     CW #3 identified a series of checks from 2015, made payable to Munchies. CW #3 stated that each of these checks represented payment for crack fronted to him/her by Patel. CW #3 added that a very small portion of this money covered his/her stays at the defendant real property #2.

91.     A series of checks and transfers made payable to Jayesh Patel and deposited into Patel's Solvay Bank account ending 9780 in 2016, were shown to CW #3 and he/she stated that each of these checks and transfers represented payment to Patel for crack.

92.     Finally, CW #3 was shown a "Confession of Judgment" dated January 20, 2017, and the stock certificates from Solvay Bank for the defendant stock. CW #3 explained that when he/she ran out of cash he/she told Patel that he/she had stock in Solvay Bank and offered to turn the stock over to Patel to repay Patel for his/her crack debt. CW #3 stated that the defendant stock certificates were transferred by CW #3 to Patel as repayment for crack fronted to him/her by Patel; CW #3 estimated at least 90% of the payments he/she made to Patel represented repayment for

drug debt, while approximately 10% represented repayment for his/her stays at the defendant real property #2, alcohol, and cab fare.

93.     When CW #3's debt reached approximately $15,000, Patel would start asking CW #3 for the money CW #3 owed Patel.

94.     CW #3 purchased crack from Patel at Munchies, the defendant real property #2, and at locations determined by Patel.  CW #3 explained if they met on the street, he/she would approach Patel's 2016 Toyota Tundra truck and Patel would get the crack from the steering column.

95.     CW #3 stated that Patel wrapped the crack in small pieces of paper.

**Cooperating Witness #4 ("CW # 4"):**

96.     On January 25, 2018, cooperating witness #4 (hereinafter "CW #4") was interviewed at the United States Attorney's Office in Syracuse, New York.  During the interview, CW #3 stated that he/she purchased crack cocaine a "few times a week" from Patel for several years.

97.     CW #4 stated that on occasion, he/she would "party" at the defendant real property #2.  CW #4 explained that "partying" included drinking beers and smoking crack.  CW #4 stated that he/she did not pay for the hotel room he/she partied in at defendant real property #2.

98.     CW #4 purchased crack cocaine from Patel at the defendant real property #2 weekly from approximately 2015 through Patel's arrest on April 20, 2017.

## ANALYSIS OF DEFENDANT BANK ACCOUNTS

**Jalaram Marts Inc. Solvay Bank Account 31107626:**

99.     During the course of this investigation, records relating to defendant bank account number 31107626 were obtained, and the records reveal that on March 20, 2009, Patel and S.P. opened business checking account number 31107626 in the name of Jalaram Marts Inc., dba Davidson

Grocery Munchies with a $17,007.89 check deposit. The records further showed that Patel and S.P. had sole signatory authority over this account.

100.    The records establish that this account was used almost solely to receive checks from numerous individuals around the Central New York area. The checks were deposited several times a week, and were followed by a large cash withdrawal ranging from $20,000.00 to $70,000.00. Deposits into this account between January 1, 2014 and December 31, 2016 totaled $21,497,757.00, while cash withdrawals for this same time-period totaled $19,088,200.00. As outlined above, CRI #1 used numerous United States Postal Money orders to purchase crack cocaine from Patel. The United Postal Service confirmed that the money orders from the controlled purchases were deposited into the Jalaram Marts Inc. dba Davidson Grocery Munchies Solvay Bank checking account 31107626.

**Jayesh Patel Solvay Bank Account 3539780:**

101.    During the course of this investigation, IRS-CI received records relating to defendant Solvay Bank account number 3539780, ("SB 9780"). These records show that on December 18, 2015, Jayesh Patel opened SB 9780 with a $4,000.00 cash deposit. The records further show that Patel has the sole signatory authority over this account.

102.    An analysis of the records completed by IRS-CI indicates that this account was used almost entirely to receive payments from CW #3, CW #1, and cash deposits. Specifically, the account received $85,600.00 from CW #3; $31,000 from CW #1; and $19,000.00 in cash.

103.    The deposits into the SB 9780 account between December 18, 2015 and February 8, 2017 totaled $156,728.38. The deposits into SB 9780 described above, were primarily used to fund a $30,000.00 transfer to Jalaram Marts Inc. Solvay Bank Account ending in 7626 and for the

purchase of the defendant real property #1, 101 Brassie Drive. Specifically, on September 29, 2016, the following checks were disbursed from SB 9780:

- $69,471.71 Payable to Steven S. Gozinsky, Esq. a real estate attorney
- $622.00 Payable to the Onondaga County Clerk
- $1,086.80 Payable to Allied American Abstract Corp.
- $500.00 Payable to Van Buren Receiver of Taxes
- $115.00 Payable to Network Title Agency of NY
- $3,505.70 Payable to Cottrell Land Surveyors PC

104.   Information obtained from the Onondaga County Clerk's Office identifies Patel as the owner of the defendant real property #1. Patel purchased this property on September 29, 2016 for $75,000.00. There is no mortgage on this property. The above-outlined financial records represent the source of the monies used to purchase defendant real property #1. Over the course of this investigation, law enforcement officers have conducted surveillance numerous times at 101 Brassie Drive, Van Buren, New York. Law enforcement officers have observed Patel and his vehicle at this residence on a regular basis.

**Hemixa Patel Scottrade Brokerage Account 65541932 (STB 1932):**

105.   During the course of this investigation, IRS-CI received records relating to defendant STB 1932. These records show that on May 17, 2016, Hemixa Patel opened STB 1932 with a $40,000.00 cash transfer from the Jayesh Patel Bank of America Savings Account XXXX7083 for M.P. (a relative), and stocks and other securities transferred from Hemixa Patel's Merrill Lynch Brokerage Account XXX-X2W84. On her brokerage account application, Hemixa Patel states her annual income is between $25,000.00 and $49,999.00 and identifies her employment as a "hygienist."

31

106.    During the course of this investigation, records from Bank of America relating to the aforementioned BOA 7083 were obtained and the records show that Jayesh Patel opened BOA 7083 on April 8, 2013, and that Jayesh Patel had sole signatory authority over this account.

107.    An analysis of the records revealed that BOA 7083 was funded with cash deposits and transfers from two additional accounts held by Jayesh Patel at Bank of America:   (1) Jayesh Patel and Hemixa Patel Bank of America Money Market Savings Account 483012310855 ("BOA 0855"); and (2) Jayesh Patel Bank of America Interest Checking Bank of America Account 483020882922 ("BOA 2922").  Deposits into this account between January 1, 2014 and May 17, 2016 totaled $146,844.49.  A sample of the deposits into this account is as follows:  cash in the amount of $61,500.00; deposit from Jayesh & Hemixa Patel BOA 0855, in the amount of $58,000.00; and a deposit from Jayesh Patel BOA 2922, in the amount of $5,000.00.  The total of the deposits is $124,500.00.

108.    The cash deposits into BOA 7083 were typically made on the same day as a large cash withdrawal from the above-outlined Jalaram Marts Inc. Solvay Bank Account 31107626.

109.    The deposits into BOA 7083 set forth above were used primarily to fund transfers back to Jayesh Patel's BOA 2922 and Jayesh and Hemixa Patel's BOA 0855.  As outlined above, on May 17, 2016, BOA 7083 was closed with a $40,000.00 transfer to the above Scottrade Account.

110.    During the course of this investigation records received from Merrill Lynch relating to the aforementioned Merrill Lynch Brokerage Account 22X-52W84 ("ML 2W84") show that Hemixa Patel opened ML 2W84 on December 1, 2015, and that Hemixa Patel had signatory authority over this account.

111.    An analysis of the records revealed that ML 2W84 was funded with a $20,000.00 transfer from BOA 0855 and a previous brokerage account held at M&T Bank.  Deposits into BOA 0855

between January 1, 2014 and May 18, 2016 totaled $436,039.33. A sample of the deposits into this account is as follows:  deposits from Hemixa Patel Payroll Checks totaling $44,256.37; deposits from transfers between Patel BOA Accounts totaling $65,000.00; and cash totaling $244,700.00.

**Jayesh Patel Scottrade Brokerage Account 65511103:**

112.    During the course of this investigation, IRS-CI received records relating to defendant account number 65511103. These records show that on June 1, 2016, Patel opened the defendant account with stocks and other securities transferred from Patel's Merrill Lynch Brokerage Account XXX-X2F26. The records further show that Patel has the sole signatory authority over this account.   On his brokerage account application, Patel states his annual income is between $50,000.00 and $99,999.00 identifies himself as the "President" of Jalaram, located at 1219 Milton Avenue, Syracuse, New York.

113.    The records from Merrill Lynch relating to the aforementioned Merrill Lynch Brokerage Account 28X-52F26 ("ML 2F26") show that Patel opened ML 2W84 on October 23, 2015, and on October 26, 2015, Patel transferred $80,000.00 from BOA 0855. The records further show that Patel had sole signatory authority over this account.

114.    An analysis of the records revealed that ML 2F26 was also funded with a $30,000.00 transfer from BOA 0855 on January 13, 2016, and a previous brokerage account held at M&T Bank.

**WHEREFORE**, the United States of America prays that process of issue in due form of law, according to the course of this Court in actions *in rem*, against the defendant currency and that a warrant issue for the arrest of the defendant accounts as more particularly described herein; that all persons having any interest therein be cited to appear herein and answer the complaint; that

33

a judgment be entered declaring the defendant accounts, defendant stock, defendant U.S. Currency, defendant real property #1, and real property #2 condemned and forfeited to the United States of America for disposition in accordance with law; that the costs of this suit be paid to and recovered by the United States of America; and that the United States be granted such other and further relief as this Court may deem just and proper.

Dated:  April 16, 2018    GRANT C. JAQUITH
             United States Attorney

             By: */s/ Tamara B. Thomson*
             Tamara B. Thomson
             Assistant United States Attorney
             Bar Roll No. 515310

VERIFICATION

STATE OF NEW YORK          )
                           )  ss:
COUNTY OF ONONDAGA         )

I, Kelli A. Morgan, being duly sworn, depose and state:

I am a Special Agent with the Internal Revenue Service-CI.  I have read the foregoing

Complaint for Forfeiture and assert that the facts contained therein are true to the best of my

knowledge and belief, based upon knowledge possessed by me and/or on information received

from other law enforcement officers.

Dated this ___13___ day of April, 2018.

_____
Kelli A. Morgan, Special Agent

Internal Revenue Service-CI


Sworn to and subscribed before me this ___13th___ day of April, 2018.

_____
Notary Public

PAULA D. BRIGGS
Notary Public, State Of New York
No. 6068241
Qualified In Onondaga County
My Commission Expires 12/31/20__21

JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS

UNITED STATES OF AMERICA

**DEFENDANTS**

$95,246.23 seized from Solvay Bank account number 31107626 maintained in the name of Jalaram Marts Inc.  et al.

(b)   County of Residence of First Listed Plaintiff   Onondaga
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Onondaga
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c)   Attorney's (Firm Name, Address, and Telephone Number)

Tamara Thomson, Assistant U.S. Attorney (315) 448-0672
United States Attorney's Office, 100 South Clinton Street
Syracuse, New York 13261

Attorneys (If Known)

## II.  BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☒ 1   U.S. Government
      Plaintiff

☐ 2   U.S. Government
      Defendant

☐ 3   Federal Question
      (U.S. Government Not a Party)

☐ 4   Diversity
      (Indicate Citizenship of Parties in Item III)

## III.  CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☒ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V.  ORIGIN   (Place an "X" in One Box Only)

☐ 1   Original
      Proceeding

☐ 2   Removed from
      State Court

☐ 3   Remanded from
      Appellate Court

☐ 4   Reinstated or
      Reopened

☐ 5   Transferred from
      another district
      (specify)

☐ 6   Multidistrict
      Litigation

☐ 7   Appeal to District
      Judge from
      Magistrate
      Judgment

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
21USC 881 and 18 USC 981 (a)(1)(A)

Brief description of cause:

## VII.  REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
   UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII.  RELATED CASE(S) IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE
04/16/2018

SIGNATURE OF ATTORNEY OF RECORD
s/Tamara B. Thomson

FOR OFFICE USE ONLY

RECEIPT #

AMOUNT   Waived - Gov't

APPLYING IFP

JUDGE   MAD

MAG. JUDGE   ATB

5:18-cv-469